IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **ROBIN ROSS** * | |
| 5144 Brightleaf Court * | |
| Baltimore, MD 21237 * | |
|     **Plaintiff** * | |
| * | |
| v. * | Civil No.: 1:14-cv-02629-CCB |
| * | |
| **GENESIS HEALTHCARE CORPORATION** * | |
| **d/b/a Patapsco Valley Center** * | |
| **d/b/a Randallstown Center** * | |
|     **Defendant** * | |
|     101 East State Street, * | |
|     Kennett Square, PA 19348 * | |
| * | **Jury Trial Requested** |
|     <u>Serve on Resident Agent</u>: * | |
|     CSC-LAWYERS INC. Service Co. * | |
|     7 ST. PAUL STREET, SUITE 1660 * | |
|     BALTIMORE, MD 21202 * | |
| * | |
| **GENESIS ELDERCARE NETWORK** * | |
|     **SERVICES, INC.** * | |
| **d/b/a Patapsco Valley Center** * | |
| **d/b/a Randallstown Center** * | |
|     **Defendant** * | |
|     148 West State Street * | |
|     Kennett Square, PA 19348 * | |
| * | |
|     <u>Serve on Resident Agent</u>: * | |
|     CSC-LAWYERS INC. Service Co. * | |
|     7 ST. PAUL STREET, SUITE 1660 * | |
|     BALTIMORE, MD 21202 * | |
| * | |
| **9109 LIBERTY ROAD OPERATIONS, LLC** * | |
| **d/b/a Patapsco Valley Center** * | |
| **d/b/a Randallstown Center** * | |
|     **Defendant** * | |
| 9109 Liberty Road * | |
| Randallstown, Maryland 21133 * | |
| * | |
|     <u>Serve on Resident Agent</u>: * | |
|     CSC-LAWYERS INC. Service Co. * | |
|     7 ST. PAUL STREET, SUITE 1660 * | |
|     BALTIMORE, MD 21202 * | |

|  |  |
|---|---|
| **GHC PAYROLL LLC** | * |
| d/b/a Patapsco Valley Center | * |
| d/b/a Randallstown Center | * |
|     Defendant | * |
|     9109 Liberty Road | * |
|     Randallstown, Maryland 21133 | * |
| | * |
|     <u>Serve on Resident Agent</u>: | * |
|     CORP. SERVICES COMPANY | * |
|     2711 CENTERVILLE ROAD | * |
|     SUITE 400 | * |
|     WILMINGTON, DE 19808 | * |
| | * |
| **GENESIS HEALTHCARE, LLC** | * |
| d/b/a Patapsco Valley Center | * |
| d/b/a Randallstown Center | * |
|     Defendant | * |
|     2711 Centerville Rd. Suite 400 | * |
|     Wilmington, DE 19808 | * |
| | * |
|     <u>Serve on Resident Agent</u>: | * |
|     CSC-LAWYERS INC. Service Co. | * |
|     7 ST. PAUL STREET, SUITE 1660 | * |
|     BALTIMORE, MD 21202 | * |

## AMENDED COMPLAINT

Plaintiff Robin Ross respectfully files this Amended Complaint because she was unlawfully retaliated against by her former employer, the Defendants, for objecting to the Defendants' unlawful discrimination against other employees. The U.S. Equal Employment Opportunity Commission has already determined that there is reasonable cause to believe Ms. Ross was unlawfully retaliated against in violation of Title VII of the Civil Rights Act, as amended ("Title VII"). *See* Exhibit A, for EEOC determination.

### STATEMENT OF FACTS

**A. Parties**

    **I.    Plaintiff**

1. Plaintiff Robin Ross, formerly Robin Spann, is an adult resident of the State of Maryland.

2

2. Ms. Ross worked at Defendants' residential nursing facility located at 9109 Liberty Road in Randallstown, Maryland 21133.

3. At the time of Ms. Ross' employment, this facility did business under the trade name and held itself out to be Randallstown Center.

4. The same facility now does business and holds itself out to be Patapsco Valley Center (hereinafter "Patapsco Valley Center").

5. Plaintiff was hired in April 2011 as a nurse in the job of Evening Shift Supervisor to work at the Patapsco Valley Center.

6. Plaintiff was fired around September 27, 2011.

7. Plaintiff's firing was confirmed by letter dated September 28, 2011, and signed by Lee Ann Young, "Regional HR Manager" for "Genesis Health Care."

## II. Defendants

### a. Defendants Constitute an Integrated Enterprise.

8. Defendant Genesis Healthcare Corp. is a for-profit corporation headquartered in Kennett Square, Pennsylvania, which does business regularly in Maryland.

9. Defendant Genesis Healthcare Corp. is registered as a foreign corporation in the State of Maryland.

10. Defendant Genesis Eldercare Network Services, Inc., is a for-profit corporation headquartered in Kennett Square, Pennsylvania, which does business regularly in Maryland.

11. Defendant Genesis Eldercare Network Services, Inc., is registered as a foreign corporation in the State of Maryland.

12. Defendant Genesis Healthcare Corp. states online at www.genesishcc.com that it owns Defendant Genesis Eldercare Network Services, Inc.:

> In 2003, the Genesis Health Ventures' Board of Directors decided to separate the Company's in-patient care and pharmacy divisions. As part of the separation, Genesis Health Ventures adopted the NeighborCare pharmacy division's trade name, and spun-off the Company's Genesis ElderCare Skilled Nursing Centers, and Assisted Living and Independent Living Communities, as well as Genesis Rehabilitation Therapy Services, into a new entity - Genesis HealthCare Corporation.

13. Defendant Genesis Eldercare Network Services, Inc., states the same corporate address for their top corporate officers in their corporate registration in their incorporation state of Pennsylvania as the address of Defendant Genesis Healthcare Corp.: 101 East State Street, Kennett Square, PA 19348.

14. Defendants Genesis Eldercare Network Services, Inc., and Defendant Genesis Healthcare Corp. share the same vice president Scott A. Estes.

15. Defendant Genesis Healthcare Corp., Inc., owns in part and/or in whole Genesis Eldercare Network Services, Inc.

16. The management and/or directors of Defendant Genesis Healthcare Corp. control in part and/or in whole the operations, decisions, hiring, firing, and actions of Genesis Eldercare Network Services, Inc.

17. Defendant Genesis Healthcare Corp. is an integrated enterprise with Genesis Eldercare Network Services, Inc. and are one and the same.

18. Genesis Eldercare signed a "Management Agreement" to manage employees at Patapsco Valley Center, where Plaintiff worked, and during Plaintiff's employment.

19. Genesis Eldercare had authority under said Management Agreement to "[s]elect, hire, employ, lease, supervise, and train" staff and management at Plaintiff's workplace during Plaintiff's employment.

4

20. Genesis Eldercare did in fact "[s]elect, hire, employ, lease, supervise, and train" staff at Plaintiffs' workplace, including Plaintiff.

21. Plaintiff was hired by Genesis Healthcare Corp. (which owns Genesis Eldercare).

22. Genesis Eldercare had on site managers at Plaintiff's workplace.

23. Genesis Eldercare employed Plaintiff and/or acted as Plaintiff's joint employer.

24. Genesis Healthcare Corp. (which owns Genesis Eldercare) uses the same "Genesis HealthCare" trademark as Defendant Genesis HealthCare, LLC.

25. This trademark appears on some and/or all of Plaintiff's paychecks.

26. Genesis Healthcare Corp. uses the same Internet domain name as Defendant Genesis HeathCare, LLC: www.genesishcc.com.

27. Genesis Healthcare Corp.'s primary online presence for the general public is located at www.genesishcc.com.

28. Genesis HealthCare, LLC's primary online presence for the general public is located at www.genesishcc.com.

29. The combined Web site of Genesis Healthcare Corp. and Genesis HealthCare, LLC, informs persons experiencing discrimination to contact the same company and address:

> Genesis HealthCare
> 101 E. State Street
> Kennett Square, PA 19348
> Attn:  Corporate Section 504 Coordinator

> *See* www.genesishcc.com/about-us/legal

30. Defendant Genesis Healthcare Corp., upon information and belief, owns Defendant Genesis HealthCare, LLC, in part and/or in whole.

31. Defendant Genesis Healthcare Corp. owns Defendants Genesis HealthCare, LLC, and Genesis Eldercare Network Services, Inc.

5

Case 1:14-cv-02629-CCB   Document 10   Filed 11/24/14   Page 6 of 20
Case 1:14-cv-02629-CCB   Document 6-1   Filed 10/31/14   Page 6 of 20

32. Defendant Genesis HealthCare, LLC, signed an Administrative Services agreement with Defendant 9109 Liberty Road Operations, LLC to provide administrative services to Plaintiffs' worksite during Plaintiffs' employment.

33. Defendant 9109 Liberty Road Operations, LLC, has represented itself as Plaintiffs' employer to the EEOC.

34. Under said Administrative Agreement, Defendant Genesis HealthCare, LLC, states that Defendant 9109 Liberty Road Operations, LLC, is its "subsidiary."

35. Defendant Genesis HealthCare, LLC, owns in part and/or in whole 9109 Liberty Road Operations, LLC.

36. Defendant Genesis HealthCare LLC, holds itself out as owning and/or managing the Patapsco Valley Center.

37. The Web site with the name of Genesis HealthCare issued a press release dated June 17, 2013, announcing the Patapsco Valley Center name change.

38. The Web site with the name of Genesis HealthCare lists this same facility, now called Patapsco Valley Center, on its Web site as its own facility, at http://www.genesishcc.com/PatapscoValley (as of August 2014 and October 2014).

39. This Web site listing the Patapsco Valley Center as owned and run by "Genesis HealthCare" (trademarked) is the joint Web site for Defendants Genesis HealthCare, LLC, and Genesis Healthcare Corp.

40. Defendant Genesis Healthcare Corp. owns Defendants Genesis HealthCare, LLC, Genesis Eldercare Network Services, Inc., and Defendant 9109 Liberty Road Operations, LLC (through Genesis HealthCare, LLC)

41. Defendants are an integrated enterprise.

6

42. Defendants have over 300 employees in the State of Maryland

43. Defendants have over 300 employees.

44. Defendant GHC Payroll, LLC, issued paychecks to Plaintiff

45. Defendant GHC Payroll, LLC, regularly issued paychecks to Plaintiff.

46. Defendant GHC Payroll, LLC, regularly issued paychecks to employees and/or staff of Patapsco Valley Center anytime during 2009 through 2011.

47. Genesis HealthCare, LLC, and/or Genesis Healthcare Corp., upon information and belief, owns or partially owns Defendant GHC Payroll, LLC.

48. Genesis HealthCare, LLC, and/or Genesis Healthcare Corp., upon information and belief, directs or partially directs Defendant GHC Payroll, LLC.

49. Defendant GHC Payroll, LLC, is an integrated enterprise with Plaintiff's employer and an employer of Plaintiff.

50. Defendant GHC Payroll, LLC, is a joint employer with Plaintiff's employer and an employer of Plaintiff.

51. Defendants all are and were an integrated enterprise during Plaintiff's employment, based on facts detailed above and below, including facts below concerning Defendants' direct control of Plaintiff and Plaintiff's workplace.

   b. **Defendants Constitute Joint Employers and Jointly Controlled Plaintiff.**

52. The discrimination at Plaintiff's workplace was directed by onsite facility administrator Mary Hochradel and onsite Director of Nursing Denise Zimmerman, as detailed in this Amended Complaint.

53. Denise Zimmerman works for "Genesis HealthCare," a trademark name jointly used by Defendants Genesis Healthcare Corp. and Genesis HealthCare, LLC.  *See* Exhibit B.

7

54. Mary Hochradel works for "Genesis HealthCare," a trademark name jointly used by Defendants Genesis Healthcare Corp. and Genesis HealthCare, LLC.  *See* Exhibit C.

55. Mary Hochradel is listed on the joint Web site of Defendants Genesis Healthcare Corp. and Genesis HealthCare, LLC.  *See* Exhibit C.

56. Denise Zimmerman asked Plaintiff to help get rid of employees of African national origin and descent.

57. When Plaintiff refused and also complained about it, Plaintiff was fired.

58. Genesis HealthCare agent Mary Hochradel was involved in deciding to fire Plaintiff.

59. During her employment, Plaintiff were subject to workplace policies, procedures, protocol, and conduct of the Defendants.

60. Plaintiff's comprehensive employee handbook, and "problem resolution" and workplace complaint procedures, all displayed the author and issuance name of "Genesis HealthCare."

61. Plaintiff's employee handbook included a one-page "Welcome to Our Genesis Family" note from CEO George V. Hager, Jr., who is the CEO of "Genesis HealthCare," a trademark name jointly used by Defendants Genesis Healthcare Corp. and Genesis HealthCare, LLC.

62. Plaintiff relied upon representations by the entity and/or entities doing business as Genesis HealthCare to make complaints of workplace discrimination to Genesis Healthcare.

63. Plaintiff complained about being pressured to commit national origin discrimination to officials with email addresses at www.genesishcc.com, including by email to Mr. Tim Davis.

64. Plaintiff's employer in its response to Plaintiff's charge of discrimination and retaliation identified Mr. Tim Davis as a "Regional Vice President" of Plaintiff's employer.

65. Mr. Tim Davis on the Web site LinkedIn in 2014 represents himself as possessing the job title of Regional Vice-President of Operations, Genesis HealthCare.  *See* Exhibit D.

66. Plaintiff's hiring letter for her job at the Patapsco Valley Center states that she has been hired to work for "Genesis HealthCare" and as an "RN Supervisor for Genesis HealthCare Corporation." *See* Exhibit E.

67. Plaintiff's termination letter dated September 28, 2011, was sent by Lee Ann Young, who represented herself as "Regional HR Manager" of "Genesis Health Care."

68. Plaintiff was told that she worked for Genesis HealthCare.

69. Genesis HealthCare, LLC, acted as a facilities operator of the Patapsco Valley Center during Plaintiff's employment at the Patapsco Valley Center, under an "Administrative Services Agreement," with responsibility for legal, planning, audit, payroll, risk management, and "general administrative" services, work, and oversight under Provision 1.A of said Agreement.

70. Genesis HealthCare, LLC, was a joint employer of Plaintiff, based on the aforementioned facts.

71. Genesis HealthCare, LLC, has over 300 employees.

72. Genesis HealthCare, LLC, has over 300 employees in Maryland

73. Genesis Eldercare Network Services, Inc. [hereinafter "Genesis Eldercare"] had a management agreement in effect during Plaintiff's employment under which agents of Genesis Eldercare managed Plaintiff's workplace.

74. Genesis Eldercare managed Plaintiff's workplace and/or workplace policies and/or workplace training.

75. Genesis Eldercare is and was the joint employer of Plaintiff during Plaintiff's employment, due to the aforementioned facts.Genesis Eldercare has over 300 employees.

76. Genesis Eldercare has over 300 employees in Maryland.

9

77. Defendant 9109 Liberty Road Operations, LLC, represented itself in response to the charges of discrimination by Plaintiff as Plaintiff's employer to the U.S. Equal Employment Opportunity Commission ("EEOC").

78. Defendant 9109 Liberty Road Operations, LLC, is listed as an employer of on one or more of Plaintiff's paychecks.

79. Defendant 9109 Liberty Road Operations, LLC, during Plaintiff's employment had a management agreement for managing Plaintiff's work with Genesis Eldercare and an administrative agreement for administering and managing Plaintiff's workplace with Genesis HealthCare, LLC.

80. Genesis HealthCare, LLC, and/or Genesis Eldercare exercised control over the Plaintiff's workplace, set employment polices and terms, recommended and implemented employee discipline, controlled wages; authorized, contracted for and/or provided employee benefits, and acted in all meaningful respects as Plaintiff's employer.

81. Genesis HealthCare, LLC, and/or Genesis Eldercare required 9109 Liberty Road Operations, LLC, to adhere and comply with its/their policies and procedures with respect to employment policies and procedures, compensation, employee benefits, employee training and orientation, and employee discipline.

82. Genesis HealthCare, LLC, and/or Genesis Eldercare was responsible for the hiring, training and orientation of all of the top managers at Defendant 9109 Liberty Road Operations, LLC, including the Director of Nursing and head Administrator.

83. Upon information and belief, while Defendant 9109 Liberty Road Operations, LLC, "on paper" could have controlled the Plaintiff's workplace, that Defendant never did so.

84. Any right that Defendant 9109 Liberty Road Operations, LLC, had "on paper" to control the

10

workplace was a sham so that the other Defendants could try to avoid liability for violations of law.

85. Defendant 9109 Liberty Road Operations, LLC, was dominated and controlled by the other Defendants in this case.

86. Defendant 9109 Liberty Road Operations, LLC, is an employer and/or joint employer of Plaintiffs.

87. Plaintiff's offer of employment letter was from Genesis HealthCare and Genesis Healthcare Corporation

88. Defendants were joint employers of Ms. Ross.

89. Defendants are one and the same, and constitute a single and joint employer of Ms. Ross.

90. Defendants hereinafter are referred to as "Genesis."

91. Genesis has more than 300 total employees in Maryland.

92. Genesis is an employer subject to Title VII of the Civil Rights Act of 1964, as amended, and subject to the Civil Rights Act, as amended.

**B. Employment**

93. Ms. Ross started working for the Genesis in April 2011 as an Evening Shift Supervisor.

94. Ms. Ross is a Registered Nurse ("RN"), certified and licensed in the State of Maryland.

95. Ms. Ross has always been a RN in good standing with the State of Maryland, never subject to any regulatory discipline.

96. Ms. Ross has been a RN for more than 28 years.

97. Genesis is a huge for-profit corporation that earned more than $4.9 billion in revenue in 2013.

98. Genesis employs more than 500 employees in the State of Maryland, and more than 10,000

11

employees nationally.

99. Ms. Ross is white with national origin ancestry from America.

100. Ms. Ross' immediate superior during her employment with Genesis was Denise Zimmerman, the Director of Nursing.

101. Ms. Zimmerman is white with national origin ancestry from America.

102. Ms. Zimmerman served as Genesis' Director of Nursing ("DON").

103. Ms. Ross' second level superior and Ms. Zimmerman's immediate superior was Mary Hochradel, the Administrator.

104. Ms. Hochradel was white with national origin ancestry from America.

105. Ms. Ross performed her job well.

106. Ms. Ross met, if not surpassed, the qualifications for her job.

107. Ms. Ross met, if not surpassed, the expectations of the Genesis, to the extent that the expectations that were not discriminatory and/or retaliatory.

108. Ms. Ross was set up for bogus and pretextual discipline by Genesis only because Ms. Ross objected to and complained about unlawful discrimination against employees with national origin ancestry from Africa.

109. Shortly after Ms. Ross started working for Genesis, DON Zimmerman started making discriminatory comments regarding subordinate black employees of African ancestry and ethnicity.

110. For example, very early on during her employment with the Genesis, DON Zimmerman told Ms. Ross that the DON wanted to get rid of the African employees. The DON made additional similar bigoted and racist comments.

111. For example, within the first several months of Ms. Ross' employment, DON Zimmerman told Ms. Ross something to the effect that she [Ms. Ross] was the only supervisor she [DON Zimmerman] could speak to because all the others were Africans. DON Zimmerman said this in a pejorative and derogatory manner.

112. Ms. Ross attempted, at first, to ignore these sort of comments made by DON Zimmerman.

113. The Genesis DON continued to try to make it clear to Ms. Ross that Ms. Zimmerman wanted Ms. Ross to try to help her get rid of the African employees.

114. DON Zimmerman asked Ms. Ross to help her [DON Zimmerman] to get rid of the African employees.

115. DON Zimmerman told Ms. Ross to write-up the African employees even if they did not do anything wrong.

116. The Genesis DON referred to the African employees as ignorant.

117. DON Zimmerman told Ms. Ross that the former Director of Nursing was African and left voodoo items in her former office.

118. After a few months, DON Zimmerman realized that that Ms. Ross would not be her 'hatchet-man' to get rid of the African employees.

119. Ms. Ross, on several occasions, refused to engage in and participate in the discrimination against Africans.

120. Ms. Ross told the Genesis DON that she disagreed with DON's discrimination and refused to engage in such conduct.

121. Ms. Ross also acted in a manner to demonstrate to the Genesis DON that Ms. Ross would not participate in the planned systematic discrimination and objected to it.

122. The Genesis DON then began an effort to force Ms. Ross out of employment by trying to make work so miserable for Ms. Ross that Ms. Ross would be forced to resign.

123. The Genesis DON disciplined Ms. Ross for false reasons and as a way to cover-up the retaliation that DON Zimmerman was directing against Ms. Ross.

124. For example, in September 2011, Genesis disciplined Ms. Ross, claiming that Ms. Ross violated its attendance policy.

125. However, the fact was that Ms. Ross had a family emergency that prevented her from calling-in two hours before the start of a shift.

126. Ms. Ross did call the Scheduling Coordinator as promptly as she could.

127. Ms. Ross had very good attendance. Genesis was just looking for ways to try to get rid of Ms. Ross after Ms. Ross objected to the discrimination.

128. Ms. Ross, on September 12, 2011, fearing the escalating retaliation sent an email to Genesis Regional Vice President, Tim Davis (white American). The email stated:

> Dear Mr. Davis,
>
> My direct supervisor, Denise Zimmermann, DON, has requested anther meeting with me today. I am concerned about my employment at Genesis and the postion that Ms. Zimmermann has put me in.
>
> During my first meeting after my formal orientation, Ms Zimmermann stated she would like me to help her to "get rid of the African people at Genesis'. She also stated to me and others that she felt that the previous administration and DON had put "voodoo" in her office, while laughing about it and sticking pins in things.
>
> I have not done anything to assist her in eliminating any employee due their race or national origin.
>
> On Sept. 9, 2011, I was given my first write up for calling out for a family emergency. My son in law while at work was taken by ambulance to Baltimore Washington Hospital for SVT (supra ventricular tachycardia). After this meeting of the "write up", she accused me of helping the people of African descent by assisting them and protecting them.
>
> Today, I explained to Ms. Zimmermann that I would not be able to come to work until my scheduled time at 4PM due to watching my grandchildren.
>
> She asked me to write up some issues that happened on Friday and I explained that my grandchildren were very young and would not be able to do so, but could do this when arriving at work. She stated "Well, I will just have to do what I have planned then"
>
> I certainly hope that Ms. Zimmermann does not have the perception that I am supporting the employees of African descent and will not result in further retaliation.

14

129. Later that same day on September 2011, Genesis suspended Ms. Ross after Ms. Ross tried to hold a subordinate employee accountable for unsatisfactory work.

130. That employee was not African, and DON Zimmerman favored that employee.

131. Genesis suspended Ms. Ross, claiming falsely that Ms. Ross acted inappropriately.

132. On about September 16, 2011, four days after Ms. Ross reported and objected to the unlawful discrimination against black Africans, Genesis issued Ms. Ross a written warning, threatening immediate termination.

133. On or about September 23, 2011, Genesis again forced Ms. Ross out of work by suspending her, again claiming falsely that she acted inappropriately.

134. Ms. Ross denied any conduct or actions that warranted any legitimate non-retaliatory adverse employment action.

135. There was no investigation of Ms. Ross' emailed complaint of discrimination and/or prior objections, even though Ms. Ross had complained and objected to the unlawful employment discrimination.

136. Four days later, on or about September 27, 2011, Genesis fired Ms. Ross.

137. Genesis' Administrator, Mary Hochradel, terminated Ms. Ross.

138. Genesis' Administrator, Mary Hochradel, telephoned Ms. Ross and terminated Ms. Ross' employment over the telephone.

139. Administrator Hochradel had made derogatory comments about Africans and was fully aware that Ms. Ross had reported and objected to the discrimination and would not participate in the discrimination.

15

140. Genesis terminated Ms. Ross because Ms. Ross objected to, reported, and would not participate in, the unlawful discrimination.

141. A clear causal connection and brief time period exist between Ms. Ross' complaints, reports and refusals to participate in the discrimination and her termination (and the preceding discipline).

142. Genesis has asserted "phoney" reasons for Plaintiff's termination and the preceding discipline.

143. Genesis took no effective remedial action to remedy the retaliation against Ms. Ross.

144. Genesis undertook no good faith or reasonable investigation about the discrimination or Ms. Ross' reporting of such and the resulting discipline.

145. No independent or "outside" representative ever interviewed Ms. Ross or any of the Africans whom were discriminated against.

146. Genesis never interviewed Ms. Ross nor assured her that she would not be retaliated against for reporting the discrimination.

147. Genesis took no adverse action against DON Zimmerman or Administrator Hochradel.

148. Genesis' Regional Vice President, Tim Davis, was fully informed of the discrimination and retaliation and took no action to stop such unlawful conduct.

149. Genesis never called a meeting of staff members, prior to Ms. Ross' termination, to address or respond to the concerns of discrimination and retaliation.

150. Ms. Ross suffered great financial loss, harm and damage due to the unlawful retaliation against her.

151. Ms. Ross suffered lost wages and benefits. She was unemployed.

152. Ms. Ross suffered severe mental anguish, pain and suffering.

153. Ms. Ross was humiliated, degraded and belittled by the actions of the Genesis.

154. Genesis caused Ms. Ross to suffer from excessive worrying and anxiety.

155. Ms. Ross' reputation and career also was damaged by Genesis' unlawful actions.

156. Genesis acted in reckless disregard of Ms. Ross' civil rights, and with actual malice towards her.

157. Genesis' conduct against Ms. Ross was intentional and the direct cause of the damages she suffered.

158. Genesis acted with evil motive against Plaintiff because Plaintiff reported, complained about, and refused to participate in the unlawful discrimination.

159. Genesis would not have taken the same action against Ms. Ross had Ms. Ross not reported, complained about, and refused to participate in the unlawful discrimination.

160. The reasons for the discipline against Ms. Ross are pretextual and a cover-up of the unlawful retaliation.

161. Upon information and belief, other employees whom have not complained about discrimination have not been treated in the same harsh disciplinary manner that Genesis treated Ms. Ross.

162. The EEOC determined that Ms. Ross was unlawfully retaliated against in violation of Title VII.

163. Ms. Ross timely filed a charge of discrimination with the EEOC concerning the facts set forth in this lawsuit.

164. Ms. Ross complied with all administrative prerequisites for filing this lawsuit.

165. The unlawful conduct against Ms. Ross occurred in this District and within this Division of this District.

## VIOLATIONS OF LAW

### UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII

SEC. 2000e-3 *[Section 704]*

166. The allegations set forth in the paragraphs 1-106 above are expressly incorporated into the claim that Genesis unlawfully retaliated against Ms. Ross in violation of Title VII.

167. Ms. Ross objected to and opposed Genesis' unlawful discrimination against African employees.

168. Ms. Ross would not participate in or support the unlawful discrimination against African employees.

169. Genesis disciplined Ms. Ross in retaliation for Ms. Ross' objections and opposition, and refusal not to participate in or support the unlawful discrimination against African employees.

170. Ms. Ross would not have been terminated and suffered other discipline but for Genesis' unlawful retaliation.

171. A clear causal connection exists between Plaintiff's conduct protected by Title VII and Genesis' unlawful retaliation.

172. Genesis' unlawful retaliation against Ms. Ross, including the bogus discipline and her firing, violated the provisions of Title VII that prohibit retaliation against persons engaging in protected activity and/or opposition.

173. Ms. Ross engaged in protected activity and/or opposition, and Genesis retaliated against her because of that.

174. Genesis directly caused Ms. Ross significant damages, including past and future lost wages and benefits, and emotional pain and suffering.

175. Genesis directly caused compensatory damages and consequential damages to Ms. Ross.

176. Punitive damages should be assessed against Genesis for its intentional discrimination against Ms. Ross, which was done with malice and evil motive, and in reckless disregard of Ms. Ross' civil rights.

177. If front pay is not awarded to Ms. Ross, Genesis should reinstate her.

178. <u>Relief Requested</u>:  Ms. Ross respectfully requests that Genesis be ordered to make her whole for financial, professional and emotional damages that Genesis inflicted on her. Ms. Ross seeks to recover her lost wages and benefits (past and future), compensatory damages, consequential damages, punitive damages and pre-and post-judgment interest.

        Respectfully submitted,

        _____/s/_____
        Stephen B. Lebau (Bar # 07258)


        _____/s/_____
        Gregg H. Mosson (Bar #30178)
        LEBAU & NEUWORTH, LLC
        606 Baltimore Avenue – Suite 201
        Towson, Maryland 21204
        tel. 410.296.3030
        fax. 410.296.8660

        *Attorneys for Plaintiff*


**REQUEST FOR JURY TRIAL**

Plaintiff respectfully requests that a jury of her peers decide her case.

        _____/s/_____
        Stephen B. Lebau

## **CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this 31st day of October 2014, I served Plaintiff's Amended Complaint through the Court's electronic filing system on counsel for the following three Defendants: GENESIS ELDERCARE NETWORK SERVICES, INC., 9109 LIBERTY ROAD OPERATIONS, LLC, and GHC PAYROLL LLC.

          _____/s/_____
          Gregg H. Mosson